THE NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES OF AMERICA *v.* PHILIP MINCH, Administrator of, etc., of Anna C. Minch, deceased.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

In an action by a life insurance company to recover back from a husband, as his wife's administrator, the amount paid to him upon a policy of insurance upon the life of his wife, upon the ground that the assured, the defendant and plaintiff's medical examiner, had conspired to cheat and defraud the plaintiff, by means of false and fraudulent representations in obtaining the insurance,—*Held* (DANIELS, J., dissenting), that in order to maintain the action it must appear that the assured had knowledge of the existence of the fraud.

False representations, fraudulently made by others in the application for insurance, and of which the assured is shown to have been ignorant, do not charge the assured with participation in the fraud or knowledge of it. (DANIELS, J., dissenting.)

Nor do false and fraudulent representations in the certificate of the insurer's medical examiner, made without the knowledge of the assured. (Id.)

EXCEPTIONS ordered to be first heard at General Term.

This action was brought to recover back $2,000 and interest, paid by the plaintiff to the defendant as administrator, etc., of Anna C. Minch, deceased, in satisfaction of a life insurance policy, issued by the plaintiff to the deceased.

The policy was issued on the 29th day of March, 1869, and provided for payment to the deceased of $2,000 on the 29th day of March, 1894, and in case the insured should die previous to that time, then within sixty days after due notice and proof of her death. The premium was $31.36 paid, and the like sum to be paid semi-annually thereafter.

The insured died on the 8th day of July, 1869, and the $2,000 insurance was paid on the 14th day of October, 1869, to the defendant, as administrator, after due notice and proof of death to the plaintiff.

The grounds, as stated in the complaint, on which the plaintiff claimed to recover back said money were, that the deceased, the defendant, and Dr. Potter, the plaintiff's medical examiner, combined and confederated together to cheat and defraud the plaintiff, and, for the purpose of doing so, about the 17th day of March, 1869, orally and in writing, falsely and fraudulently represented to the plaintiff, its agents and officers, in applying to them for a policy of insurance upon her life, that she had not had and did not then have any serious illness, local disease or any disorder, infirmity or weakness; that there were no indications upon her of any disease or ulcer, and that she was then in all respects a healthy risk and safely insurable; that the policy was issued upon such false representations; that at the time of making them the insured had a cancer which subsequently destroyed her life; that after her death the defendant and Potter "falsely and fraudulently represented to the plaintiff that the cause of her death was pneumonia or inflammation of the lungs, and not any other disease; that she had no other disease, and that there were no marks of previous disease or injury on her person; that the plaintiff, relying upon these representations, after due notice and proof of her death had been furnished to the plaintiff, and on or about the 11th day of September, 1869, duly paid to the defendant, as administrator of said deceased, the $2,000 insurance.

The answer put in issue the material allegations of the complaint, except the issuing of the policy, notice and proof of the death of the deceased, and payment to the defendant as administrator. The case was tried at the Montgomery County Circuit in June, 1871, before the Hon. E. H. ROSEKRANS and a jury.

On the trial the plaintiff put in evidence deceased's application for insurance, the statement called a "friend's certifi-

cate," and certain questions put by the plaintiff to its medical examiner, Dr. Potter, and his answers thereto, called "medical examiner's certificate;" the policy of insurance; and also what are termed in the case "proofs of death," containing a statement of Dr. Potter, the plaintiff's medical examiner, as to the time and cause of the death of the insured.

Other evidence was given, which is sufficiently referred to in the opinion.

At the close of the testimony, several requests were made to the justice by the plaintiff's counsel to make certain rulings and to submit certain questions to the jury, which were refused and exceptions taken by the plaintiff's counsel.

The court also held as stated in the opinion, and directed that a nonsuit be entered, to which several rulings the plaintiff's counsel duly excepted.

The court also directed that the bill of exceptions to be made be first heard at General Term, and that judgment in the meantime be suspended.

*J. E. Lowery*, for the plaintiff.

*J. M. Carroll*, for the defendant.

Present—MILLER, P. J.; PARKER and DANIELS, JJ.

By the Court—MILLER, P. J.   At the close of the trial of this action at the Circuit Court, the judge made several rulings, to which exceptions were taken before directing a nonsuit; and, among other things, he ruled that there must be proof of a combination, conspiracy or understanding to defraud the company to which Mrs. Minch was a party, and that there was not sufficient evidence from which the jury could find such conspiracy.   The plaintiff's counsel excepted to this decision; and if the judge committed no error in thus holding, then the plaintiff was properly nonsuited upon this ground alone, and the action could not be maintained.

I think that the judge was clearly right in the ruling which

he made, and as one good ground was enough to sustain a nonsuit, the other rulings are of no consequence.

The action was predicated upon an alleged fraudulent combination and confederacy between Davison Potter, the medical examiner of the plaintiff, the defendant and his wife, Mrs. Minch. It was alleged and claimed, upon the trial, that the parties named had combined and confederated together to defraud the plaintiff; and that, with the intent to deceive, cheat and defraud the plaintiff, they made the false and fraudulent representations stated in the complaint, by means of which the policy of insurance was obtained on the life of Mrs. Minch.

Now, it is quite plain that if there was no evidence that Mrs. Minch had any knowledge of any combination and conspiracy, or of any intent to cheat and defraud the plaintiff, then there is an utter failure to establish the cause of action alleged, and no case is made out which entitles the plaintiff to recover. So far as relates to Mrs. Minch, at least, the proof fails to establish the allegations made, and as she was not a party to the combination, the action must fall to the ground.

There is no evidence in the case which establishes that the parties, when together, ever exchanged a word between themselves on the subject. It appears that the defendant applied to Adams, the agent of the company, for the policy of insurance. Adams filled up the application, and took the answers to the questions propounded to Mrs. Minch, the applicant, from her husband, at his (Adams') office, and sent the application by the husband to Mrs. Minch. It was returned to Adams by Mr. Minch, with a mark purporting to be Mrs. Minch's mark attached at the end of it. Adams considered it necessary that it should be witnessed, and about one week afterward he went to Mrs. Minch, saw her personally, and asked if she had affixed her mark to the application. She replied that she had, and he then signed his name as a witness. He did not interrogate her in regard to it. The proof also shows that Mrs. Minch was a German, could not read or write Eng-

lish, and spoke the English language very imperfectly. The application was not made to her, she did not know the contents of it, and they were not stated to her; that Dr. Potter, at the request of Adams, made a careful examination of the deceased. He had no conversation with Mr. Minch in relation to the insurance of his wife's life, before the policy was issued, nor with Mrs. Minch, except upon the examination, and he testifies that she could only talk sufficiently to get along with the examination; that he could not talk with her, as she talked German, and he could not carry on a general conversation with her perfectly and accurately. He did not know the contents of the application, never having seen it until the trial. Nor is there any evidence that either Minch or his wife ever saw or knew of the contents of Dr. Potter's certificate.

It is manifest, from the testimony, that Mrs. Minch was in no way a party with her husband and Potter to any fraudulent combination. To constitute a fraudulent conspiracy against a party, it must be proved that the person charged had knowledge of its existence and the purpose for which it was designed. Such knowledge is wanting in this case, and there is not a particle of proof that Mrs. Minch knew anything in regard to it. So, also, to make a party liable for fraudulent representations, they must be known to be such by the party making them, and such party cannot know them to be false without having knowledge that they were made and what they actually were.

As Mrs. Minch signed, or rather affixed her mark to, the application, she would, perhaps, be bound by the representations which it contained, as warranties, without knowing what they were, but she could not be affected by them as fraudulent, without knowledge.

As she had no knowledge what representations were actually made upon the application, they were not fraudulent as to her, although they were false.

Even if the representations made by Dr. Potter's certificate of examination were false and fraudulent, as the deceased

People ex rel. Am. Linen Thread Co. *v.* Assessors of Vil. of Mechanicville.

had no knowledge of its contents, she cannot be responsible for it, or affected by them as fraudulent. She was not responsible for any fraudulent representations he might make as the medical examiner of the company without her knowledge or consent.

As the judge was right in his ruling upon the point discussed, he properly refused to submit the case to the jury upon any of the propositions made by the plaintiff's counsel, and properly refused the requests made; nor was there any error in the admission or rejection of evidence. The nonsuit was right, and judgment must be ordered for the defendant upon the verdict.

PARKER, J., concurred; DANIELS, J., dissented.

Ordered accordingly.